1  MARIO N. ALIOTO, ESQ. (56433)
   LAUREN C. RUSSELL, ESQ. (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA  94123
4  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
5  E-mail: malioto@tatp.com
   laurenrussell@tatp.com
6
7  JOSEPH M. PATANE, ESQ. (72202)
   LAW OFFICE OF JOSEPH M. PATANE
8  2280 Union Street
   San Francisco, CA  94123
9  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
10 E-mail: jpatane@tatp.com

11 Attorneys for Plaintiffs
12 [Additional Attorneys Appear On Signature Page]

**ORIGINAL FILED**

MAR 1 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

13            **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

MMC

15 SAMUEL J. NASTO; PATRICK PIPER; ADRIENNE )  Case No.
   BELAI; CRAIG STEPHENSON; DAVID G. NORBY; )
16 JOHN LARCH; CONSTANCE HARE; JAMES        )     08    1371
17 STRINGWELL; and, GARY HANSON, on behalf of )  **CLASS ACTION COMPLAINT**
   themselves and all others similarly situated,  )
18                                                )
                  Plaintiffs,                     )
19 vs.                                            )  **JURY TRIAL DEMANDED**
                                                  )
20 LG ELECTRONICS, INC.; SAMSUNG              )
21 ELECTRONICS CO., LTD.; SAMSUNG SDI CO.,    )
   LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; )
22 SAMSUNG SDI AMERICA, INC.; SAMTEL          )
   COLOR, LTD.; TOSHIBA CORPORATION;          )
23 TOSHIBA AMERICA ELECTRONIC                 )
24 COMPONENTS, INC.; TOSHIBA AMERICA          )
   INFORMATION SYSTEMS, INC.; MATSUSHITA      )
25 TOSHIBA PICTURE DISPLAY CO., LTD.; MT      )
   PICTURE DISPLAY CORPORATION OF AMERICA )
26 (NEW YORK); MT PICTURE DISPLAY             )
   CORPORATION OF AMERICA (OHIO);             )
27 MATSUSHITA ELECTRIC INDUSTRIAL CO.,        )
28 LTD.; PANASONIC CORPORATION OF NORTH       )

**1**
**CLASS ACTION COMPLAINT**

1 AMERICA; BEIJING-MATSUSHITA COLOR CRT )
COMPANY, LTD.; ORION ELECTRIC CO., LTD.; )
2 ORION AMERICA, INC.; HITACHI LTD.; HITACHI )
AMERICA LTD.; HITACHI ASIA, LTD.; )
3 CHUNGHWA PICTURE TUBES LTD.; )
CHUNGHWA PICTURE TUBES (MALAYSIA) )
4 SDN. BHD.; LP DISPLAYS INTERNATIONAL, )
LTD.; KONINKLIJKE PHILIPS ELECTRONICS )
5 N.V.; PHILIPS ELECTRONICS NORTH AMERICA; )
IRICO GROUP CORP.; IRICO DISPLAY DEVICES )
6 CO., LTD.; THAI CRT COMPANY, LTD.; and )
TATUNG COMPANY OF AMERICA, INC., )
7

8 Defendants

9

10 ## CLASS ACTION COMPLAINT

11     Plaintiffs Samuel J. Nasto, Patrick Piper, Adrienne Belai, Craig Stephenson, David G.

12 Norby, John Larch, Constance Hare, James Stringwell and Gary Hanson ("Plaintiffs") on behalf

13 of themselves and all others similarly situated in the United States, bring this action for damages

14 and injunctive relief under state and federal antitrust, unfair competition, and consumer

15 protection laws against the Defendants named herein, demanding trial by jury, and complaining

16 and alleging as follows:

17 ## NATURE OF THE CASE

18     1.     This lawsuit is brought as a class action on behalf of individuals and entities that

19 indirectly purchased products containing cathode ray tubes ("CRT Products") (as further defined

20 below), in the United States from Defendants, their predecessors, or their controlled subsidiaries

21 and affiliates during the period beginning at least January 1, 1995 through the present (the

22 "Class Period"). Plaintiffs allege that during the Class Period the Defendants conspired to fix,

23 raise, maintain or stabilize prices of CRT Products sold in the United States. Because of

24 Defendants' unlawful conduct, Plaintiffs and other Class Members paid artificially inflated

25 prices for CRT Products and have suffered antitrust injury to their business or property.

26 ## JURISDICTION AND VENUE

27     2.     This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to

28 obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover

1  damages under state antitrust and consumer protection laws, and to recover costs of suit,
2  including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly
3  situated sustained as a result of the Defendants' violations of those laws.

4      3.      The Court has subject matter jurisdiction over the federal claim under 28 U.S.C.
5  §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28
6  U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the
7  same case or controversy.

8      4.      This court also has subject matter jurisdiction over this class action pursuant to
9  the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new
10  subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of
11  a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated
12  amount in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has
13  jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of
14  a state within the United States and one or more of the Defendants is a citizen or subject of a
15  foreign state."

16      5.      Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in
17  this judicial district because during the Class Period one or more of the Defendants resided,
18  transacted business, was found, or had agents in, this district, and because a substantial part of
19  the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of
20  the affected portion of the interstate trade and commerce described below has been carried out in
21  this district.

22                                    **DEFINITIONS**

23      6.      As used herein, the term "CRT Products" means cathode ray tubes and products
24  containing cathode ray tubes, including television sets and computer monitors.

25      7.      The "Class Period" or "relevant period" means the period beginning at least
26  January 1, 1995 through the present.

27      8.      "Person" means any individual, partnership, corporation, association, or other
28  business or legal entity.

**3**
**CLASS ACTION COMPLAINT**

1     9.     The "Indirect Purchaser States" are Arizona, California, District of Columbia,

2  Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,

3  North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and

4  Wisconsin.

5     10.    The "Consumer Fraud States" are Arkansas, California, District of Columbia,

6  Florida, Hawaii, Kansas, Maine, Massachusetts, Nebraska, New York, New Hampshire, New

7  Mexico, North Carolina, Rhode Island, and Vermont.

8                                    **PLAINTIFF**

9     11.    Plaintiff Samuel J. Nasto ("Nasto") is a Nevada resident. During the relevant

10  period, Nasto indirectly purchased CRT Products from one or more of the Defendants or their

11  co-conspirators and has been injured by reason of the antitrust violations alleged in this

12  Complaint.

13     12.    Plaintiff Patrick Piper ("Piper") is a Florida resident. During the relevant period,

14  Florida indirectly purchased CRT Products from one or more of the Defendants or their co-

15  conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

16     13.    Plaintiff Adrienne Belai ("Belai") is a New York resident. During the relevant

17  period, Belai indirectly purchased CRT Products from one or more of the Defendants or their

18  co-conspirators and has been injured by reason of the antitrust violations alleged in this

19  Complaint.

20     14.    Plaintiff Craig Stephenson ("Stephenson") is a New Mexico resident. During the

21  relevant period, Stephenson indirectly purchased CRT Products from one or more of the

22  Defendants or their co-conspirators and has been injured by reason of the antitrust violations

23  alleged in this Complaint.

24     15.    Plaintiff David G. Norby ("Norby") is a Minnesota resident. During the relevant

25  period, Norby indirectly purchased CRT Products from one or more of the Defendants or their

26  co-conspirators and has been injured by reason of the antitrust violations alleged in this

27  Complaint.

28

16. Plaintiff John Larch ("Larch") is a West Virginia resident. During the relevant period, Larch indirectly purchased CRT Products from one or more of the Defendants or their co-conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

17. Plaintiff Constance Hare ("Hare") is a South Dakota resident. During the relevant period, Hare indirectly purchased CRT Products from one or more of the Defendants or their co-conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

18. Plaintiff James Stringwell ("Stringwell") is a Michigan resident. During the relevant period, Stringwell indirectly purchased CRT Products from one or more of the Defendants or their co-conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

19. Plaintiff Gary Hanson ("Hanson") is a North Dakota resident. During the relevant period, Hanson indirectly purchased CRT Products from one or more of the Defendants or their co-conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

## DEFENDANTS

20. Defendant LG Electronics, Inc. ("LG Electronics") is a corporation organized under the laws of Korea with its principal place of business located at LG Twin Towers, 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul 150-721, South Korea. LG Electronics is a \$48.5 billion global force in consumer electronics, home appliances and mobile communications, which established its first overseas branch office in New York in 1968. The company's name was changed from GoldStar Communications to LG Electronics in 1995, the year in which it also acquired Zenith in the United States. During the Class Period, LG Electronics manufactured, sold and distributed CRT Products to customers throughout the United States.

21. Defendant Samsung Electronics Co., Ltd. is a company organized under the laws of Korea with its principal place of business located at Samsung Main Building, 250, 2-ga, Taepyong-ro, Jung-gu, Seoul 100-742, South Korea. During the Class Period, Samsung

1   Electronics Co., Ltd. manufactured, sold and distributed CRT Products to customers throughout
2   the United States.

3       22.    Defendant Samsung SDI Co., Ltd. f/k/a Samsung Display Device Co., Ltd. is a
4   company organized under the laws of Korea with its principal place of business located at 15th –
5   18th Floor, Samsung Life Insurance Building, 150, 2-ga, Taepyong-ro, Jung-gu, Seoul, 100-716,
6   South Korea. Samsung SDI Co., Ltd. is a public company. Samsung Electronics Co., Ltd. is its
7   majority shareholder holding almost 20 percent of the stock. Founded in 1970, Samsung SDI
8   Co., Ltd. claims to be the world's leading company in the display and energy businesses, with
9   28,000 employees and facilities in 18 countries. Samsung SDI Co., Ltd. has offices in Chicago
10  and San Diego. During the Class Period, Samsung SDI Co. Ltd. manufactured, sold and
11  distributed CRT Products to customers throughout the United States.

12      23.    Defendant Samsung Electronics America, Inc. is a New York corporation with its
13  principal place of business located at 105 Challenger Road, 6th Floor, Ridgefield Park, New
14  Jersey 07660. Samsung Electronics America, Inc. is a wholly-owned and controlled subsidiary
15  of defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Electronics
16  America, Inc. manufactured, sold and distributed CRT Products to customers throughout the
17  United States.

18      24.    Defendant Samsung SDI America, Inc. is a California corporation with its
19  principal place of business located at 3333 Michelson Drive, Suite 700, Irvine, California.
20  Samsung SDI America, Inc. is a wholly owned and controlled subsidiary of Samsung SDI Co.,
21  Ltd., which is in turn a wholly owned and controlled subsidiary of Samsung Electronics Co.,
22  Ltd. During the Class Period, Samsung SDI America, Inc. manufactured, sold and distributed
23  CRT Products to customers throughout the United States.

24      25.    Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., Ltd., Samsung
25  Electronics America, Inc., and Samsung SDI America, Inc. are referred to collectively herein as
26  "Samsung."

27      26.    Defendant Samtel Color, Ltd. ("Samtel") is an Indian company with its principal
28  place of business located at 52, Community Centre, New Friends Colony, New Delhi-110065.

**6**
**CLASS ACTION COMPLAINT**

Samtel's market share for CRT products sold in India is approximately 40%. Samtel is India's largest exporter of CRT products. Samtel has gained safety approvals from the United States, Canada, Germany and Great Britain for its CRT products. During the Class Period, Samtel manufactured, sold and distributed CRT Products to customers throughout the United States.

27. Defendant Toshiba Corporation ("Toshiba") is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. In 2001, Toshiba held a 5-10 percent worldwide market share for CRTs used in televisions and computer monitors. In 2002, Toshiba entered into a joint venture with defendant Matsushita Electric called Matsushita Toshiba Picture Display Co., Ltd. in which the entities consolidated their CRT businesses. In 2004, Toshiba entered into a contract with defendant Orion whereby Orion became the supplier and maker of Toshiba-branded CRT televisions. During the Class Period, Toshiba manufactured, sold and distributed CRT Products to customers throughout the United States.

28. Toshiba America Electronics Components, Inc. is a California corporation with its principal place of business located at 9775 Toledo Way, Irvine, California 92618, and 19000 MacArthur Boulevard, Suite 400, Irvine, California 92612. Toshiba America Electronics Components, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., which is a holding company for Defendant Toshiba Corporation, and the sales and marketing representative for Defendant Matsushita Toshiba Picture Display Co., Ltd. During the Class Period, Toshiba Electronics Components, Inc. manufactured, sold and distributed CRT Products to customers throughout the United States.

29. Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business located at 9470 Irvine Boulevard, Irvine, California 92718. Toshiba America Information Systems, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class Period, Toshiba America Information Systems, Inc. manufactured, sold and distributed CRT Products to customers throughout the United States.

1    30.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.
2  and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

3    31.    Defendant Matsushita Toshiba Picture Display Co., Ltd. ("Matsushita-Toshiba")
4  was established as a CRT joint venture between Defendants Matsushita and Toshiba.
5  Matsushita-Toshiba is a Japanese entity with its principal place of business located at 1-1,
6  Saiwai-cho, Takatsuki-shi, Osaka 569-1193, Japan. On April 3, 2007, Defendant Matsushita
7  Electric purchased the remaining stake in Matsushita-Toshiba, making it a wholly owned
8  subsidiary, and renaming it MT Picture Display Co., Ltd. During the Class Period, Matsushita-
9  Toshiba manufactured, sold and distributed CRT Products to customers throughout the United
10  States.

11    32.    Defendant MT Picture Display Corporation of America (New York)
12  ("MTPDA(NY)") is a dissolved Maryland corporation previously located at 100 Westinghouse
13  Circle, Horseheads, New York 14845. MTDPA(NY) was a wholly owned and controlled
14  subsidiary of Defendant Matsushita-Toshiba. MTDPA(NY) specialized in the manufacture of
15  CRT televisions above 30 inches wide, supplying some 950,000 units annually to the North
16  American market. Matsushita and Toshiba announced plans to discontinue operations on
17  December 29, 2005. During the Class Period prior to December 2005, MTDPA(NY)
18  manufactured, sold and distributed CRT Products to customers throughout the United States.

19    33.    Defendant MT Picture Display Corporation of America (Ohio) ("MTDPA(OH)")
20  was a Delaware corporation with its principal place of business located at 1554 McKaig
21  Avenue, Building A, Troy, Ohio 45373. MTDPA(OH) was dissolved on March 27, 2007.
22  MTDPA(OH) was a wholly owned and controlled subsidiary of Defendant Matsushita-Toshiba.
23  During the Class Period prior to February 2006, MTDPA(OH) manufactured, sold and
24  distributed CRT Products to customers throughout the United States.

25    34.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a
26  Japanese entity with its principal place of business located at 1006 Oaza Kadoma, Kadoma-shi,
27  Osaka 571-8501, Japan. In 2002, Matsushita Electric entered into a CRT joint venture with
28  Defendant Toshiba forming Defendant Matsushita-Toshiba. Matsushita Electric was the

**8**
**CLASS ACTION COMPLAINT**

1 majority owner with 64.5 percent. On April 3, 2007, Matsushita Electric purchased the
2 remaining 35.5 percent stake in the joint venture, making Matsushita-Toshiba a wholly owned
3 subsidiary of Matsushita Electric. Matsushita Electric is best known for its Panasonic brand,
4 which in 2005 had the highest CRT revenue in Japan. During the Class Period, Matsushita
5 Electric manufactured, sold and distributed CRT Products to customers throughout the United
6 States.

7 35. Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware
8 corporation with its principal place of business located at One Panasonic Way, Secaucus, New
9 Jersey. Panasonic is a wholly owned and controlled subsidiary of Defendant Matsushita Electric.
10 During the Class Period, Panasonic manufactured, sold and distributed CRT Products to
11 customers throughout the United States.

12 36. Defendant Beijing-Matsushita Color CRT Company, Ltd. ("BMCC") is a
13 Chinese company with its principal place of business located at No. 9, Jiuxianqiao N. Rd.,
14 Dashanzi Chaoyang District, Beijing, China. BMCC is the second largest producer of CRTs for
15 televisions in China. During the Class Period, BMCC manufactured, sold and distributed CRT
16 Products throughout the United States.

17 37. Defendant Orion Electric Co., Ltd. ("Orion Electric") is a Japanese company
18 with its principal places of business at 41-1 Iehisa-cho, Echizen-shi, Fukui 915-8555, Japan.
19 Orion Electric currently manufactures CRT Products for Defendant Toshiba Corporation.
20 During the Class Period, Orion Electric manufactured, sold and distributed CRT Products to
21 customers throughout the United States.

22 38. Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with
23 its principal place of business located at Hwy 1 North, Orion Place, Princeton, Indiana. Orion
24 America is a wholly owned and controlled subsidiary of Defendant Orion Electric. During the
25 Class Period, Orion America manufactured, sold and distributed CRT Products to customers
26 throughout the United States.

27 39. Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan,
28 with its principal place of business located at 6-1 Marunouchi Center Building 13F, Chiyoda-ku,

**9**
**CLASS ACTION COMPLAINT**

1  Tokyo 100-8280, Japan. Hitachi Ltd. is the parent company for the Hitachi brand of CRT

2  products. During the Class Period, Hitachi Ltd. manufactured, sold and distributed CRT

3  Products to customers throughout the United States.

4      40.    Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and

5  controlled subsidiary of defendant Hitachi. Hitachi America is a business entity organized under

6  the laws of New York, with its principal place of business located at 2000 Sierra Point Parkway,

7  Brisbane, California 94005. During the Class Period, Hitachi America manufactured, sold and

8  distributed CRT Products to customers throughout the United States.

9      41.    Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its

10  principal place of business located at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore,

11  049318. Hitachi Asia is a wholly owned and controlled subsidiary of defendant Hitachi. During

12  the Class Period, Hitachi Asia manufactured, sold and distributed CRT Products to customers

13  throughout the United States.

14      42.    Defendants Hitachi Ltd., Hitachi America, and Hitachi Asia are collectively

15  referred to herein as "Hitachi."

16      43.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa Picture Tubes") is a

17  business entity organized under the laws of Taiwan, with its principal place of business located

18  at 1127 Heping Road, Bade City, Taoyuan, Taiwan R.O.C. Chunghwa Picture Tubes is a

19  leading manufacturer of CRT Products. During the Class Period, Chunghwa Picture Tubes

20  manufactured, sold and distributed CRT Products to customers throughout the United States.

21      44.    Defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("Chungwha

22  Malaysia") is a Malaysian company with its principal place of business located at Lot 1, Subang

23  Hi-Tech Industrial Park, Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia.

24  Chunghwa Malaysia a wholly owned and controlled subsidiary of defendant Chungwha Picture

25  Tubes. Chungwha Malaysia is also a leading worldwide supplier of CRT Products. During the

26  Class Period, Chungwha Malaysia manufactured, sold and distributed CRT Products to

27  customers throughout the United States.

28

1  45.  Defendants Chungwha Picture Tubes and Chungwha Malaysia are collectively

2  referred to herein as "Chungwha."

3  46.  Defendant LP Displays International, Ltd. f/k/a LG Philips Displays ("LP

4  Displays") was created in 2001 as a 50/50 joint venture between defendants LG Electronics and

5  Royal Philips Electronics of The Netherlands. In March 2007, LP Displays became an

6  independent company organized under the laws of Hong Kong with its principal place of

7  business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road

8  Central, Sheung Wan, Hong Kong. LP Displays is a leading supplier of color picture tubes for

9  use in television sets and computer monitors with annual sales for 2006 of over \$2 billion. LP

10 Displays announced in March 2007 that Royal Philips and LG Electronics would lose control

11 over the company and the shares would be owned by financial institutions and private equity

12 firms. During the Class Period, LP Displays manufactured, sold and distributed CRT Products to

13 customers throughout the United States.

14 47.  Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics

15 N.V. ("Royal Philips") is a company organized under the laws of The Netherlands with its

16 principal place of business located at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The

17 Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics

18 companies, with 160,900 employees located in over 60 countries. Royal Philips had sole

19 ownership of its CRT business until 2000. In 2001, Royal Philips transferred its CRT business

20 to a 50/50 CRT joint venture with LG Electronics forming defendant LP Displays. In December

21 2005, as a result of increased pressure on demand and prices for CRTs, Royal Philips wrote off

22 the remaining book value of 126 million Euros of its investment and said it would not inject

23 further capital into the joint venture. During the Class Period, Royal Philips manufactured, sold

24 and distributed CRT Products to customers throughout the United States.

25 48.  Defendant Philips Electronics North America Corporation ("Philips Electronics

26 NA") is a Delaware corporation with its principal palce of business located at 1251 Avenue of

27 the Americas, New York, NY 10020-1104. Philips Electronics NA is a wholly owned and

28 controlled subsidiary of defendant Royal Philips. During the Class Period, Philips Electronics

NA manufactured, sold and distributed CRT Products to customers throughout the United States.

49. Defendant Irico Group Corporation is a Chinese entity with its principal place of business located at 1 Caihong Rd., Xianyang City, Shaanxi Province 712021. Irico Group Corporation is the parent company for multiple subsidiaries engaged in the manufacture, distribution, and sale of CRT Products. During the Class Period, Irico Group Corporation manufactured, sold and distributed CRT Products throughout the United States.

50. Irico Display Devices Co., Ltd. is a Chinese entity with its principal place of business located at No. 16, Fenghui South Road West, District High-tech Development Zone, Xi'an, SXI 710075. Irico Display Devices Co., Ltd. is a partially-owned subsidiary of defendant Irico Group Corporation. In 2006, Irico Display Devices Co., Ltd. was China's top CRT maker. During the Class Period, Irico Display Devices Co., Ltd. manufactured, sold and distributed CRT Products throughout the United States.

51. Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. are collectively referred to herein as "Irico."

52. Defendant Thai CRT Company, Ltd. ("Thai CRT") is a Thai company with its principal place of business located at 1/F Siam Cement Road, Bangsue Dusit, Bangkok, Thailand. Thai CRT is a subsidiary of Siam Cement Group. It was established in 1986 as Thailand's first manufacturer of CRTs for color televisions. During the Class Period, Thai CRT manufactured, sold and distributed CRT Products throughout the United States.

53. Defendant Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business located at 2850 El Presidio Street, Long Beach, California. Tatung America was founded in 1972 and is a wholly owned and controlled subsidiary of Tatung Company of Taiwan. During the Class Period, Tatung America manufactured, sold and distributed CRT Products throughout the United States.

## DEFENDANTS AND CO-CONSPIRATORS

54. Various other persons, firms and corporations, not named as Defendants herein, and presently unknown to Plaintiffs, have participated as co-conspirators with Defendants and

**12**
**CLASS ACTION COMPLAINT**

1  have performed acts and made statements in furtherance of the conspiracy and/or in furtherance

2  of the anticompetitive, unfair or deceptive conduct.

3      55.    Whenever in this Complaint reference is made to any act, deed or transaction of

4  any corporation, the allegation means that the corporation engaged in the act, deed or transaction

5  by or through its officers, directors, agents, employees or representatives while they were

6  actively engaged in the management, direction, control or transaction of the corporation's

7  business or affairs.

8      56.    Each of the Defendants named herein acted as the agent or joint venturer of or for

9  the other Defendants with respect to the acts, violations and common course of conduct alleged

10  herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States

11  agent for CRT Products made by its parent company.

12  ## INTERSTATE TRADE AND COMMERCE

13      57.    Throughout the Class Period, there was a continuous and uninterrupted flow of

14  CRT Product sales in interstate and international commerce throughout the United States.

15      58.    Defendants' unlawful activities, as described herein, took place within the flow

16  of interstate commerce to CRT Product purchasers located in states other than the states in

17  which Defendants are located, as well as throughout the world, and had a direct, substantial and

18  reasonably foreseeable effect upon interstate and international commerce, including the United

19  States CRT Products market.

20  ## CLASS ACTION ALLEGATIONS

21      59.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant

22  to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of

23  the following class (the "Nationwide Class"):

24      All persons and or entities residing in the United States (excluding Defendants,
        co-conspirators, their subsidiaries and affiliates, all governmental entities, and
25      any judicial officer presiding over this action, including members of his/her
        immediate family and judicial staff, and any juror assigned to this action) who or
26      which indirectly purchased CRT Products in the United States for their own use
        and not for resale, at any time during the period from January 1, 1995 through
27      the present. Specifically excluded from this Class are the Defendants; the
        officers, directors or employees of any Defendant; any entity in which any
28

**13**
**CLASS ACTION COMPLAINT**

Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

60. Plaintiffs also bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following State classes or subclasses (collectively "Indirect Purchaser State Classes"): Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

61. This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a. The Classes are ascertainable and there is a well-defined community of interest among members of the Classes;

b. Based upon the nature of trade and commerce involved and the number of indirect purchasers of CRT Products, Plaintiffs believe that the number of Class members is very large, and therefore joinder of all Class members is not practicable;

c. Plaintiffs' claims are typical Class members' claims because Plaintiffs indirectly purchased CRT Products manufactured by Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Classes and the relief sought is common to the Classes;

d. The following common questions of law or fact, among others, exist as to the members of the Classes:

i. Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

1        ii.    Whether the combination or conspiracy caused CRT Products

2    prices to be higher than they would have been in the absence of Defendants' conduct;

3        iii.    The operative time period of Defendants' combination or

4    conspiracy;

5        iv.    Whether Defendants' conduct caused injury to the business or

6    property of Plaintiffs and the members of the Classes;

7        v.    The appropriate measure of the amount of damages suffered by

8    the Classes;

9

10        vi.    Whether Defendants' conduct violates Section 1 of the Sherman

    Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

11

12        vii.    Whether Defendants' conduct violates the Indirect Purchaser

13    States' antitrust laws as alleged in the Second Claim for Relief;

14

15        viii.    Whether Defendants' conduct violates the unfair competition and

    consumer protection laws of the Consumer Protection States as alleged in the Third Claim for

16    Relief;

17

        ix.    The appropriate nature of class-wide equitable relief.

18

        e.    These and other questions of law and fact common to the members of the

19    Classes predominate over any questions affecting only individual members, including legal and

20    factual issues relating to liability and damages;

21

        f.    After determination of the predominant common issues identified above,

22    if necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

23

        g.    Plaintiffs will fairly and adequately protect the interests of the Classes in

24    that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

25    retained counsel competent and experienced in the prosecution of class actions and antitrust

26    litigation to represent them and the Classes;

27

28

**15**
**CLASS ACTION COMPLAINT**

1          h.     A class action is superior to other available methods for the fair and

2   efficient adjudication of this litigation since individual joinder of all damaged Class members is

3   impractical. The damages suffered by the individual Class members are relatively small, given

4   the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

5   absent the availability of class action procedures it would not be feasible for Class members to

6   redress the wrongs done to them. Even if the Class members could afford individual litigation,

7   the court system could not. Further, individual litigation presents the potential for inconsistent or

8   contradictory judgments and would greatly magnify the delay and expense to all parties and the

9   court system. Therefore, the class action device presents far fewer case management difficulties

10  and will provide the benefits of unitary adjudication, economy of scale and comprehensive

11  supervision in a single court;

12          i.      Defendants have acted, and/or refused to act, on grounds generally

13  applicable to the Classes, thereby making appropriate final injunctive relief with respect to the

14  Classes as a whole; and

15          j.      In the absence of a class action, Defendants would be unjustly enriched

16  because they would be able to retain the benefits and fruits of its wrongful conduct.

## CRT PRODUCT MARKET

18          62.     CRT stands for "cathode ray tube." A CRT is a vacuum tube that is coated on its

19  inside face with light sensitive phosphors. An electron gun at the back of the vacuum tube emits

20  electron beams. When the electron beams strike the phosphors, the phosphors produce either

21  red, green, or blue light. A system of magnetic fields inside the CRT, as well as varying

22  voltages, directs the beams to produce the desired colors. This process is rapidly repeated

23  several times per second to produce the desired images.

24          63.     CRT technology was first developed more than a century ago. The first

25  commercially practical CRT television was made in 1931. However, it was not until the RCA

26  Corporation introduced the product at the 1939 World's Fair that it became widely available to

27  consumers. Since then, CRTs have become the heart of most display products, including

28  televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs. Even

**16**
**CLASS ACTION COMPLAINT**

1  large public displays, including many scoreboards at sports arenas, are comprised of thousands
2  of single color CRTs.

3      64.    Until the last few years, CRTs were the dominant technology used in displays,
4  including television and computer monitors. During the Class Period, this translated into the sale
5  of millions of CRT Products, generating billions of dollars in annual profits.

6      65.    Conventional CRT televisions are being rapidly replaced by liquid crystal and
7  plasma displays, resulting in this alleged price fixing scheme to slow down the declining CRT
8  Product prices. Between 2000 and 2006, revenues from the sale of CRT televisions in the United
9  States declined by 50.7 percent and are predicted to decline by an additional 84.5 percent
10  between 2006 and 2010.

11      66.    Although demand has been sharply declining as a result of the popularity of flat-
12  panel LCDs and plasma televisions, CRT televisions were still being sold during the Class
13  Period, making collusion and the international price fixing conspiracy worthwhile. Due to the
14  high costs of LCD panels and plasma displays during the Class Period, a niche market for CRTs
15  existed as a cheaper alternative to these new technologies.

16  ## STRUCTURAL CHARACTERISTICS OF THE CRT PRODUCT MARKET

17      67.    The structural characteristics of the CRT Product market are conducive to the
18  type of collusive activity alleged in this Complaint.

19      68.    CRT Products are commodity-like products which are manufactured in
20  standardized sizes. One defendant's CRT Product for a particular application, such as a
21  particular size television set or computer monitor, is substitutable for another's. Defendants sell
22  and Plaintiff (and Class members) purchases CRT Products primarily on the basis of price.

23      69.    It is easier to form and sustain a cartel when the product in question is
24  commodity-like because it is easier to agree on prices to charge and to monitor those prices once
25  an agreement is formed.

26      70.    Demand for CRT Products is declining. Static or declining demand is another
27  factor which makes the formation of a collusive arrangement more likely because it provides a
28  greater incentive to firms to avoid price competition.

**17**
**CLASS ACTION COMPLAINT**

71.    Defendants are horizontal competitors, meaning that they sell at the same wholesale or retail level of the distribution chain. This makes it easier to monitor adherence to the cartel.

72.    There are substantial barriers to entry in the CRT Products industry. It would require substantial time, resources and industry knowledge to even potentially overcome the barriers to entry. It is also extremely unlikely that a new producer would enter the market in light of the declining demand for CRT products.

73.    Newer industries are typically characterized by rapid growth, innovation and high profits. The CRT Product market is a mature one, and like many mature industries, is characterized by slim profit margins, creating a motivation to collude.

74.    During the Class Period, the CRT industry has been dominated by relatively few companies. In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display and Chunghwa Picture Tubes together held a collective 78% share of the global CRT market. The high concentration of market share facilitates coordination since there are fewer cartel members among which to coordinate pricing or allocate markets, and it is easier to monitor the pricing and production of other cartel members.

75.    The CRT industry also had significant consolidation during the Class Period, including but not limited to: (a) the creation of LG Philips Displays in 2001 as a joint venture between Royal Philips and LG Electronic's CRT business; (b) the 2002 merger of Toshiba and Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products for Toshiba, which effectively took Toshiba's capacity out of the market.

76.    Involvement in long standing joint ventures, both in the CRT market and closely related markets, also gave these "competitors" continuous opportunities to discuss pricing, capacity utilization, and other important prospective market information. The mutually beneficial nature of the business relations between certain Defendants not only provided the opportunity to conspire; it also created a financial incentive to do so.

77.    Examples of the high degree of cooperation among Defendants in both the CRT market and other closely related markets include the following:

1    a.    Defendant Chungwha has a long standing joint venture with Defendant

2 Samsung Electronics Co., Ltd. for the production of liquid crystal display panels. Chungwha

3 now licenses the technology from Defendant Royal Philips, although this is a recent

4 development that helped resolve a patent infringement suit filed in 2002.

5    b.    Defendants LG Electronics and Hitachi Ltd. entered into a joint venture in

6 2000 for the manufacture, sale and distribution of optical storage products such as DVD drives.

7    c.    Defendant Samtel participates in a joint venture, Samcor Glass Limited,

8 with Defendant Samsung Electronics Co., Ltd. and non-Defendant Corning Inc., USA for the

9 production and supply of picture tube glass.

10    d.    Defendant Orion participates in a joint venture for the manufacture of

11 CRT Products with Defendant Toshiba, as well as non-Defendants P.T. Tabung Gambar

12 Indonesia and Japanese trading company Sumitomo Corporation.

13    e.    Defendant Samtel claims to have supplied CRTs to Defendants LG

14 Electronics, Samsung, Royal Philips, and Matsushita.

15    78.    Defendants also maintain their close relationships through common membership

16 in trade associations. Defendants Chungwha, Hitachi and Samsung are all members of the

17 Society for Information Display. Defendants Samsung and LG Electronics are two of the co-

18 founders of the Korea Display Industry Association. Similarly, Defendants Orion, LG

19 Electronics, LP Displays, and Samsung are members of the Electronic Display Industrial

20 Research Association. Upon information and belief, Defendants use these trade associations as

21 vehicles for discussing and agreeing upon their pricing for CRT Products. At the meetings of

22 these trade associations, Defendants exchange proprietary and competitively sensitive

23 information which they use to implement and monitor the conspiracy.

24    **DEFENDANTS' COLLUSIVE ACTIVITIES**

25    79.    Plaintiffs are informed and believe, and thereon allege, that in order to control

26 and maintain profitability during declining demand for CRTs, Defendants and their co-

27 conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which

28

**19**
**CLASS ACTION COMPLAINT**

1 has been to raise the prices at which they sold CRT Products to artificially inflated levels from at
2 least January 1, 1995 through the present.

3     80.    Defendants' collusion is evidenced by unusual price movements in the CRT
4 market. In the 1990s, industry analysts repeatedly predicted declines in consumer prices for
5 CRTs that did not fully materialize. Despite these predictions, and the existence of economic
6 conditions warranting a drop in prices, CRT prices nonetheless remained stable.

7     81.    During the Class Period, while demand in the United States for CRT Products
8 continued to decline, Defendants' conspiracy was effective in moderating the normal downward
9 pressures on prices for CRT Products caused by the entry and popularity of the new generation
10 LCD panels and plasma display products.

11     82.    During the Class Period, there were not only periods of unnatural and sustained
12 price stability, but there were also unexplained increases in prices of CRT Products. These price
13 increases were despite the declining demand due to the approaching obsolescence of CRT
14 Products caused by the emergence of a new, potentially superior and clearly more popular
15 substitutable technology.

16     83.    These price increases and price stability in the market for CRT Products during
17 the Class Period are inconsistent with a competitive market for a product facing rapidly
18 decreasing demand caused by a new, substitutable technology.

19     84.    On November 8, 2007, antitrust authorities in Europe, Japan and South Korea
20 raided the offices of manufacturers of CRT Products as part of an international investigation of
21 alleged price fixing.

22     85.    Defendant MT Picture Display Co., Ltd., the CRT unit of Defendant Matsushita
23 Electric, has confirmed that it was raided by Japan's Fair Trade Commission.

24     86.    *Kyodo News* reported on November 8, 2007, upon information and belief, that
25 MT Picture Display fixed prices for CRTs with manufacturers in three Asian countries,
26 including South Korea's Samsung SDI Co.

27     87.    *Kyodo News* further reported that:

28

Officials of these three companies are believed to have had at least 10 meetings since 2005 in major Asian cities to coordinate target prices when delivering their products to TV manufacturers in Japan and South Korea, the sources said.

88.     Defendant Samsung SDI Co., Ltd. was raided by South Korea's Fair Trade Commission, which has started an investigation into Samsung's CRT business.

89.     The European Commission confirmed that it had carried out surprise inspections at the European offices of CRT Product manufacturers, seeking evidence of cartel activity in the sector.

90.     According to Japan's *Nikkei Business Daily*, authorities in the United States were also involved in the investigation of an alleged international cartel of CRT manufacturers.

91.     The *Asian Shimbun* further reported on November 10, 2007 that "[t]he representatives held meetings in Southeast Asia where the companies operate CRT factories, the sources said. The European Commission, the European Union's executive branch, and the U.S. Justice Department have been investigating four companies' [referring to the four Asian-based manufacturers—MT Picture Display, Samsung SDI Co., Chungwha Picture Tubes, LP Displays] overseas units and are closely consulting with the Fair Trade Commission by sharing information."

92.     On November 12, 2007, *Dow Jones International News* reported that Defendant Chungwha Picture Tubes Ltd. had received a subpoena on November 9, 2007 issued by a California District Court "to assist in an investigation into whether cathode ray tube manufacturers had set up a cartel."

93.     Unnamed sources close to the investigation report that the firms are suspected of fixing the amount they charge TV manufacturers for CRTs in an effort to stop prices from dropping.

94.     On November 21, 2007, Defendant Royal Philips publicly disclosed that it too is subject to one or more investigations into anticompetitive conduct in the CRT industry. Royal Philips spokesman Joon Knapen declined to comment on which jurisdictions have started investigations. Royal Philips stated that it intended to assist the regulators.

95. As outlined above, Defendants have a history of competitor contacts resulting from joint ventures, numerous cross-licensing agreements, and other alliances in related businesses in the electronics industry.

96. Several Defendants have a history of "cooperation" and anticompetitive conduct. For example, Defendant Samsung was fined $300 million by the U.S. Department of Justice in October 2005 for participating in a conspiracy to fix the prices of Dynamic Random Access Memory.

97. Defendants Samsung and Toshiba have acknowledged being contacted by the U.S. Department of Justice as part of an ongoing investigation for fixing prices of Static Random Access Memory and NAND Flash Memory.

98. In December 2006, authorities in Japan, Korea, the European Union and the United States revealed a comprehensive investigation into anticompetitive conduct among CRT manufacturers. Defendant Samsung, Toshiba and LG Philips (a joint venture between Defendants LG Electronics and Royal Philips) are under criminal investigation for price fixing in the closely related CRT market.

99. By engaging in collusive conduct in the market for CRT Products, Defendants were able to manipulate and artificially fix, raise, maintain or stabilize the prices for the CRT Products that they manufactured and sold in the United States.

100. During the Class Period, Plaintiffs and the class members indirectly purchased CRT Products manufactured by the Defendants or their co-conspirators.

101. Plaintiffs and the class members paid more for their indirect CRT Product purchases than they would have paid had Defendants not fixed CRT Product prices and cooperated in other aspects of the CRT Product market.

102. As a direct and proximate result of Defendants' conspiracy, Plaintiffs and the class members have been injured and financially damaged in their respective businesses and property in presently undetermined amounts.

//

//

**22**
**CLASS ACTION COMPLAINT**

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

103.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

104.    Beginning at a time unknown to Plaintiffs, but at least as early as January 1, 1995, through at the present, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

105.    In particular, Defendants have combined and conspired to fix, raise, maintain or stabilize the prices of CRT Products sold in the United States.

106.    Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market prices of CRT Products as herein alleged.

107.    The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in the United States and elsewhere.

108.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

      a.    Participated in meetings and conversations to discuss the prices of CRT Products;

      b.    Agreed to manipulate prices and supply of CRT Products in a manner that deprived purchasers of CRT Products of free and open competition;

      c.    Issued price announcements and price quotations in accordance with the agreements reached; and

1            d.      Sold CRT Products to customers in the United States at non-competitive

2                  prices.

3        109.     The combination and conspiracy alleged herein has had the following effects,

4 among others:

5            a.      Price competition in the sale of CRT Products has been restrained,

6                  suppressed and/or eliminated in the United States;

7            b.      Prices for CRT Products sold by Defendants and their co-conspirators

8                  have been fixed, raised, maintained and stabilized at artificially high, non-

9                  competitive levels throughout the United States; and

10           c.      Those who purchased CRT Products directly or indirectly from

11                 Defendants have been deprived the benefits of free and open competition.

12        110.     As a direct result of the unlawful conduct of Defendants and their co-conspirators

13 in furtherance of their continuing contract, combination or conspiracy, Plaintiffs and the

14 members of the Nationwide Class have been injured and will continue to be injured in their

15 business and property by paying more for CRT Products purchased indirectly from the

16 Defendants and their co-conspirators than they would have paid and will pay in the absence of

17 the combination and conspiracy.

18        111.     These violations are continuing and will continue unless enjoined by this Court.

19        112.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the

20 Nationwide Class seek the issuance of an injunction against Defendants, preventing and

21 restraining the violations alleged herein.

22                              **Second Claim For Relief**

23                     **(Violation of State Antitrust Statutes)**

24        113.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and

25 every allegation set forth in the preceding paragraphs of this Complaint.

26        114.     Defendants' intentional and purposeful anticompetitive acts that are described

27 above, including but not limited to acts of collusion to set prices and the actual act of price

28 fixing itself, were intended to and did in fact case Plaintiffs and the members of the Indirect

1  Purchaser State Classes to pay supracompetitive prices for CRT Products purchased in the

2  Indirect Purchaser States.

3      115.    Defendants' contract, combination and conspiracy as described above is in

4  violation of the following state antitrust statutes:

5      116.    By reason of the foregoing, Defendants have entered into agreements in restraint

6  of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

7      117.    By reason of the foregoing, Defendants have entered into agreements in restraint

8  of trade in violation of California Business & Professions Code §16720 et seq.

9      118.    By reason of the foregoing, Defendants have entered into agreements in restraint

10  of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

11      119.    By reason of the foregoing, Defendants have entered into agreements in restraint

12  of trade in violation of Iowa Code §§553.1 et seq.

13      120.    By reason of the foregoing, Defendants have entered into agreements in restraint

14  of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

15      121.    By reason of the foregoing, Defendants have entered into agreements in restraint

16  of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

17      122.    By reason of the foregoing, Defendants have entered into agreements in restraint

18  of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

19      123.    By reason of the foregoing, Defendants have entered into agreements in restraint

20  of trade in violation of Minnesota Stat. §§325D.52 et seq.

21      124.    By reason of the foregoing, Defendants have entered into agreements in restraint

22  of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

23      125.    By reason of the foregoing, Defendants have entered into agreements in restraint

24  of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

25      126.    By reason of the foregoing, Defendants have entered into agreements in restraint

26  of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

27      127.    By reason of the foregoing, Defendants have entered into agreements in restraint

28  of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

1    128.    By reason of the foregoing, Defendants have entered into agreements in restraint
2    of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

3    129.    By reason of the foregoing, Defendants have entered into agreements in restraint
4    of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

5    130.    By reason of the foregoing, Defendants have entered into agreements in restraint
6    of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

7    131.    By reason of the foregoing, Defendants have entered into agreements in restraint
8    of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

9    132.    By reason of the foregoing, Defendants have entered into agreements in restraint
10    of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

11    133.    By reason of the foregoing, Defendants have entered into agreements in restraint
12    of trade in violation of West Virginia Code §§47-18-1 et seq.

13    134.    By reason of the foregoing, Defendants have entered into agreements in restraint
14    of trade in violation of Wisconsin Stat. §§133.01 et seq.

15    135.    Class members in each of the states listed above paid supracompetitive,
16    artificially inflated prices for CRT Products. As a direct and proximate result of Defendants'
17    unlawful conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been
18    injured in their business and property in that they paid more for CRT Products than they
19    otherwise would have paid in the absence of Defendants' unlawful conduct.

20    136.    As a result of Defendants' and their co-conspirators' violation of the above
21    Indirect Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted
22    by a particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the
23    extent permitted by the above Indirect Purchaser States' antitrust laws.

24                                **Third Claim for Relief**

25            **(Violation of State Consumer Protection and Unfair Competition Statutes)**

26    137.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and
27    every allegation set forth in the preceding paragraphs of this Complaint.

28

**26**
**CLASS ACTION COMPLAINT**

1    138.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

2    fraudulent acts or practices in violation of the state consumer protection and unfair competition

3    statutes listed below.

4    139.    Defendants have engaged in unfair competition or unfair or deceptive acts or

5    practices in violation of Arkansas Code §4-88-101 et seq.

6    140.    Defendants have engaged in unfair competition or unfair or deceptive acts or

7    practices in violation of California Business & Professions Code §17200 et seq.

8    141.    Defendants have engaged in unfair competition or unfair or deceptive acts or

9    practices in violation of District of Columbia Code §28-3901 et seq.

10    142.    Defendants have engaged in unfair competition or unfair or deceptive acts or

11    practices in violation of Florida Stat. §501.201 et seq.

12    143.    Defendants have engaged in unfair competition or unfair or deceptive acts or

13    practices in violation of Hawaii Rev. Stat. §480 et seq.

14    144.    Defendants have engaged in unfair competition or unfair or deceptive acts or

15    practices in violation of Kansas Stat. §50-623 et seq.

16    145.    Defendants have engaged in unfair competition or unfair or deceptive acts or

17    practices in violation of 5 Maine Rev. Stat. §207 et seq.

18    146.    Defendants have engaged in unfair competition or unfair or deceptive acts or

19    practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

20    147.    Defendants have engaged in unfair competition or unfair or deceptive acts or

21    practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

22    148.    Defendants have engaged in unfair competition or unfair or deceptive acts or

23    practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

24    149.    Defendants have engaged in unfair competition or unfair or deceptive acts or

25    practices in violation of New Mexico Stat. §57-12-1 et seq.

26    150.    Defendants have engaged in unfair competition or unfair or deceptive acts or

27    practices in violation of New York Gen Bus. Law §349 et seq. Specifically:

28        a.    Defendants engaged in commerce in New York;

**27**
**CLASS ACTION COMPLAINT**

1          b.       Defendants and their co-conspirators secretly agreed to raise prices by

2  direct agreement on bids to customers located in New York and through artificial supply

3  restraints on the entire CRT Product market;

4          c.       New York consumers were targets of the conspiracy;

5          d.       The secret agreements were not known to New York consumers;

6          e.       Defendants made public statements about the price of CRT Products that

7  Defendants knew would be seen by New York consumers; such statements either omitted

8  material information that rendered these statements that they made materially misleading or

9  affirmatively misrepresented the real cause of price increases for CRT Products; and,

10  Defendants alone possessed material information that was relevant to consumers, but failed to

11  provide the information;

12          f.       Because of Defendants' unlawful trade practices in the State of New

13  York, there was a broad impact on New York consumer class members who indirectly

14  purchased CRT Products; and consumer class members have been injured because they have

15  paid more for CRT Products than they would have paid in the absence of Defendants' unlawful

16  trade acts and practices;

17          g.       Because of Defendants' unlawful trade practices in the State of New

18  York, New York consumer class members who indirectly purchased CRT Products were misled

19  to believe that they were paying a fair price for CRT Products or the price increases for CRT

20  Products were for valid business reasons; and similarly situated consumers were potentially

21  affected by Defendants' conduct;

22          h.       Defendants knew that their unlawful trade practices with respect to

23  pricing of CRT Products would have an impact on New York consumers and not just

24  Defendants' direct customers;

25          i.       Defendants knew that their unlawful trade practices with respect to

26  pricing of CRT Products would have a broad impact, causing consumer class members who

27  indirectly purchased CRT Products to be injured by paying more for CRT Products than they

28  would have paid in the absence of Defendants' unlawful trade acts and practices;

1  |  j.  Defendants' consumer-oriented violations adversely affected the public
2  |  interest in the State of New York.

3  |  151.  Defendants have engaged in unfair competition or unfair or deceptive acts or
4  |  practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

5  |  152.  Defendants have engaged in unfair competition or unfair or deceptive acts or
6  |  practices in the sale of CRT Products that were indirectly purchased primarily for personal,
7  |  family, or household purposes in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

8  |  a.  Defendants engaged in commerce in Rhode Island;

9  |  b.  Defendants and their co-conspirators unscrupulously and secretly agreed
10 |  to raise CRT Product prices by direct agreement on prices Defendants charged their customers
11 |  located in Rhode Island and through artificial supply restraints on the entire CRT Products
12 |  market;

13 |  c.  The secret agreements were not known to Rhode Island natural persons
14 |  who indirectly purchased CRT Products primarily for personal, family or household purposes;

15 |  d.  Defendants made public statements that Defendants knew would be seen
16 |  by Rhode Island natural persons who indirectly purchased CRT Products primarily for personal,
17 |  family or household purposes; such statements created a likelihood of confusion or
18 |  misunderstanding with respect to the real reasons that the prices of CRT Products were rising;
19 |  and, such statements either omitted material information that rendered the statements materially
20 |  misleading and confusing, or affirmatively deceived such consumers about the real cause of
21 |  price increases for CRT Products;

22 |  e.  Because of Defendants' unlawful and unscrupulous trade practices in
23 |  Rhode Island, natural persons in Rhode Island who indirectly purchased CRT Products primarily
24 |  for personal, family or household purposes were misled or deceived to believe that they were
25 |  paying a fair price for CRT Products or the price increases for CRT Products were for valid
26 |  business reasons;

27 |  f.  Natural persons who indirectly purchased CRT Products primarily for
28 |  personal, family or household purposes have been injured bcause they have paid more for CRT

**29**
**CLASS ACTION COMPLAINT**

1   Products than they would have in the absence of Defendants' unlawful and unscrupulous trade
2   acts and practices;

3          g.      Defendants knew that their unscrupulous and unlawful trade practices
4   with respect to pricing CRT Products would have an impact on Rhode Island natural persons
5   who indirectly purchased CRT Products primarily for personal, family or household purposes
6   and not just Defendants' direct customers;

7          h.      Defendants knew that their violations with respect to pricing of CRT
8   Products would have a broad impact, causing natural persons who indirectly purchased CRT
9   Products primarily for personal, family or household purposes to be injured by paying more for
10  CRT Products than they would have paid in the absence of Defendants' unlawful trade acts and
11  practices;

12         i.      Defendants' violations adversely affected public policy in Rhode Island.

13  153.    Defendants have engaged in unfair competition or unfair or deceptive acts or
14  practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

15  154.    Class members in each of the Consumer Fraud States listed above paid
16  supracompetitive, artificially inflated prices for CRT Products. As a direct and proximate result
17  of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their
18  business and property in that they paid more for CRT Products than they otherwise would have
19  paid in the absence of Defendants' unlawful conduct.

20  155.    Plaintiffs and Class members are therefore entitled to all appropriate relief as
21  provided for by the above Consumer Fraud States' laws, including but not limited to, actual
22  damages, injunctive relief, attorneys' fees and equitable relief such as restitution and/or
23  disgorgement of all revenues, earnings, profits, compensation and benefits which may have been
24  obtained by Defendants as a result of their unlawful conduct.

25                          **Fourth Claim for Relief**

26                  **(Unjust Enrichment and Disgorgement of Profits)**

27  156.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and
28  every allegation set forth in the preceding paragraphs of this Complaint.

**30**
**CLASS ACTION COMPLAINT**

157.    Defendants have been unjustly enriched through overpayments by Plaintiffs and the Class members and the resulting profits.

158.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and the members of the Classes.

159.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and the Class members may seek restitution.

## FRAUDULENT CONCEALMENT

160.    Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Classes.

161.    Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced. Nor could Plaintiffs and the Class members have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

162.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect to CRT Products, which they affirmatively concealed, in at least the following respects:

a.    By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

b.    By giving false and pretextual reasons for their CRT Product price increases during the relevant period and by describing such pricing falsely as being the result of external costs rather than collusion.

1    163.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs

2  and the Classes assert the tolling of any applicable statute of limitations affecting the rights of

3  action of Plaintiffs and the members of the Classes.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.    That the Court determine that the claims alleged herein under the Sherman Act,

7  state antitrust laws, state consumer protection and/or unfair competition laws may be maintained

8  as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    That the Court adjudge and decree that the unlawful conduct, contract,

10  combination and conspiracy alleged herein constitutes:

> a.    A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim
>        for Relief;
>
> b.    A violation of the Indirect Purchaser States' antitrust laws as alleged in the
>        Second Claim for Relief;
>
> c.    A violation of the Consumer Fraud States' consumer protection and unfair
>        competition laws as alleged in the Third Claim for Relief; and
>
> d.    Acts of unjust enrichment as set forth in the Fourth Claim for Relief herein.

C.    That Plaintiffs and the Indirect Purchaser State Classes recover damages, as

19  provided by the Indirect Purchaser States' antitrust laws and the Consumer Fraud States'

20  consumer protection and unfair competition laws, and that a joint and several judgment in favor

21  of Plaintiffs and the Classes be entered against the Defendants in an amount to be trebled in

22  accordance with such laws;

D.    That Defendants, their co-conspirators, successors, transferees, assigns, parents,

24  subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all

25  other persons acting or claiming to act on behalf of Defendants, or in concert with them, be

26  permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,

27  maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of

1  action, or adopting or following any practice, plan, program or design having a similar purpose

2  or effect in restraining competition;

3      E.      That Plaintiffs and the Classes be awarded restitution, including disgorgement of

4  profits obtained by Defendants as a result of its acts of unfair competition and acts of unjust

5  enrichment;

6      F.      That the Court award Plaintiffs and the Classes they represent pre-judgment and

7  post-judgment interest as permitted by law;

8      G.      That Plaintiffs and the members of the Classes recover their costs of suit,

9  including reasonable attorneys' fees as provided by law; and

10      H.      That the Court award Plaintiffs and the Classes they represent such other and

11  further relief as may be necessary and appropriate.

## JURY DEMAND

13      Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

15  Dated: March 10, 2008          By:      _Mario N. Alioto_

16                                          Mario N. Alioto (56433)
                                            Lauren C. Russell (241151)
17                                          **TRUMP, ALIOTO, TRUMP & PRESCOTT,
                                            LLP**
18                                          2280 Union Street
                                            San Francisco, CA  94123
19                                          Telephone:  (415) 563-7200
                                            Facsimile: (415) 346-0679
20                                          malioto@tatp.com ; laurenrussell@tatp.com

21                                          Joseph M. Patane (72202)
22                                          **LAW OFFICES OF JOSEPH M. PATANE**
                                            2280 Union Street
23                                          San Francisco, CA 94123
                                            Telephone: (415) 563-7200
24                                          Facsimile: (415) 346-0679
25                                          E-mail: jpatane@tatp.com

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lawrence G. Papale (67068)
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
E-mail: lgpapale@papalelaw.com

Kenneth L. Valinoti (118442)
**VALINOTI & DITO LLP**
180 Montgomery Street, Suite 940
San Francisco, CA 94104
Telephone: (415) 986-1338
Facsimile: (415) 986-1231
E-mail: kvalinoti@valinoti-dito.com

Sherman Kassof (66383)
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
E-mail: heevay@att.net

Seymour J. Mansfield
Jean B. Roth
**MANSFIELD, TANICK & COHEN, P.A.**
1700 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 339-4295
Facsimile: (612) 339-3161
E-mail: smansfield@mansfieldtanick.com

Joel Flom
**JEFFRIES, OLSON & FLOM, P.A.**
1202 27th Street South
Fargo, N.D. 58103
Telephone: (701) 280-2300
Facsimile: (701) 280-1800
E-mail: joel@jeffrieslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael G. Simon
M. Eric Frankovitch
**FRANKOVITCH, ANETAKIS,
COLANTONIO & SIMON**
337 Penco Road
Weirton, WV 26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892
E-mail: msimon@facslaw.com

Robert Gerard
**GERARD & OSUCH, LLP**
1516 Front Street
San Diego, CA 92101
Telephone: (619) 232-2828
E-mail: rgerard@gerardlaw.com

Robert Gerard
**GERARD & OSUCH, LLP**
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, NV 89146
Telephone: (702) 251-0093
E-mail: rgerard@gerardlaw.com

**Attorneys for Plaintiffs Nasto, Piper, Belai,
Stephenson, Norby, Larch, Hare, Stringwell and
Hanson And All Others Similarly Situated**